Jennifer Mara, Esq.
**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

Eric A. Plourde, Esq. (PHV application forthcoming)
Jack Shaw, Esq. (PHV application forthcoming)
**PROCOPIO, CORY,**
 **HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101

*Attorneys for Plaintiff*
*HealthMax Medical Technology Ltd.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HEALTHMAX MEDICAL TECHNOLOGY LTD., <br><br> Plaintiff, <br><br> v. <br><br> ALL AMERICAN HEALTH LLC and DANIEL LAUTURE, <br><br> Defendants. | Civil Action No.: _____ <br><br><br> **COMPLAINT &** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff HealthMax Medical Technology Ltd. ("HealthMax" or "Plaintiff"), for its Complaint against All American Health LLC ("AAH") and Daniel Lauture ("Lauture") (collectively, "Defendants"), hereby states as follows:

1

## PARTIES

1. HealthMax is a corporation existing under the laws of Hong Kong, with its principal place of business located at 1/F Wah Lai Industrial Centre, 10-14 Kwei Tei Street, Hong Kong.

2. AAH is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 1070 State Route 18, Unit 2, East Brunswick, New Jersey 08816.

3. On information and belief, Lauture is an individual residing at 522 West Harbor Place, West New York, New Jersey 07093. On information and belief, he is the sole Member/owner of AAH and/or is in total control of AAH.

## JURISDICTION AND VENUE

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that there is complete diversity of citizenship between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### The Creation of APU

6. In or around May 2020, at the beginning of the Covid-19 pandemic, Zoe Wong ("Wong"), on behalf of HealthMax, and Lauture, Managing Member of AAH, began negotiations regarding the formation of a joint venture for the manufacture and sale of facemask products in the United States. HealthMax had the capability to produce facemasks in China, but needed a trusted business partner to enter the United States market.

7. Lauture claimed to be the trusted business partner that HealthMax needed, making numerous promises and representations to Wong and HealthMax regarding his skills, abilities, and personal connections to run a business specializing in the manufacture, distribution, and sale of protective facemasks.

8. Specifically, Lauture claimed he had the skills, abilities, and personal connections to provide a facility for the operation and management of such a business; develop a sales network for such products; obtain required regulatory approvals for such products including by the Food and Drug Administration ("FDA") and National Institute for Occupational Safety & Health ("NIOSH"); and otherwise advance the business of manufacturing, distributing, and selling protective facemasks in the United States.

9. In truth, Lauture lacked the skills, abilities, and personal connections to deliver on his promises. Lauture took advantage of HealthMax and embellished his background for the purpose of inducing HealthMax to enter a joint venture with AAH and entrust millions of dollars to his care.

## The Joint Venture Agreement

10. On or about June 16, 2020, HealthMax and AAH executed a Joint Venture Agreement (the "JV Agreement").[1] The purpose of the JV Agreement was to permit the parties to organize, jointly invest in, and operate a joint venture enterprise for the manufacture, distribution, and sale of various types of protective face masks and potentially other products or businesses.

11. The JV Agreement required the parties to form a corporation under the laws of the State of Delaware to be named American Products Unlimited, Inc. ("APU") with its principal place of business in the State of New Jersey. In or around June 2020, APU, a Delaware corporation, was created.

12. The owners ("Members") of APU are HealthMax (60% ownership) and AAH (40% ownership). Pursuant to Paragraph 4 of the JV Agreement, HealthMax agreed to invest $10,000,000.10 in exchange for 300,000 shares in APU and AAH agreed to invest $6,666,666.60 in exchange for 200,000 shares in APU. Pursuant to the timing terms set forth in Paragraph 4 of the JV Agreement,

---

[1] A true and correct copy of the JV Agreement is attached hereto as Exhibit A.

HealthMax transmitted $5,000,000 to APU in or around July 2020 and the remainder of its investment at various times between October 2021 and July 2022.

13. Pursuant to Paragraph 4 of the JV Agreement, HealthMax was entitled to appoint three Directors to the Board of Directors and AAH was entitled to appoint two Directors to the Board of Directors.

14. The JV Agreement imposed certain duties on the parties. Paragraph 5 required HealthMax to "(a) Provide all required equipment and machinery for the operation of the Venture; (b) Provide technical support to the Venture's operations (i.e. manufacturing facemasks); and (c) Provide and explore sources for the raw materials to be used in the Venture's manufacturing operations."

15. HealthMax complied with all of its obligations under the JV Agreement. For example, starting in June 2020, and continuing thereafter, HealthMax shipped machines (including at least three mask machines) and raw materials to New Jersey for use in APU's business.

16. Paragraph 5 required AAH to "(a) Provide a facility for the operation and management of the Venture; (b) Provide and develop the sales network (customer lists) for sales of the Venture's products; and (c) Obtain all required approvals for the Venture's products, including, without limitation, FDA and NIOSH approvals."

17.  Additionally, Paragraph 8 of the JV Agreement stated that no "Member, including any principal, member, and/or shareholder of a Member, on its own account or in partnership with any third party, may have any interest in or engage in any business, trade, profession, or employment that is in competition with the purpose of the Venture."

18.  Following the parties' execution of the JV Agreement in June 2020, Lauture was appointed Chief Executive Officer ("CEO") of APU.  While serving as CEO, Lauture earned hundreds of thousands of dollars in annual salary, though the specific amount fluctuated by year.

### Defendants' Failures and Breaches

19.  Defendants patently failed to live up to the terms of the JV Agreement and entirely failed to position APU to engage in the business for which it was created, *i.e.* the manufacture, distribution, and sale of various types of protective facemasks.  Years have elapsed since the Covid-19 pandemic – the catalyst for the creation of APU – began, yet APU is virtually no closer to opening for business than it was when it was created in June 2020.  Despite millions invested, APU has not sold a single mask.

20.  Specifically, Defendants breached Paragraph 5(a) of the JV Agreement by failing to provide a facility for the operation and management of the Venture.  On information and belief, Roswin Companies LLC ("Roswin") is a

limited liability company owned by, controlled by, and/or affiliated with Lauture. Instead of providing a facility for APU as required, Defendants caused APU to enter a lease agreement (the "Lease Agreement") for APU's facility in Lawrenceville, New Jersey, with Roswin, which required APU to pay Roswin $90,000 per month in base rent, plus additional charges and expenses, including but not limited to utilities, taxes, insurance, and other charges or expenses.

21. APU's Chief Operating Officer ("COO"), Kavungal Tajudeen, executed the Lease Agreement on behalf of APU, while Lauture executed the Lease Agreement on behalf of Roswin.

22. On information and belief, by virtue of this arrangement, Defendants engaged in self-dealing and sought to profit through APU's payment of rent to Roswin.

23. In November 2021, Roswin sent a letter stating that APU had failed to pay rent and quarterly additional rent payments and threatening to terminate the lease agreement with APU.

24. Defendants breached Paragraph 5(b) of the JV Agreement as they have taken no steps to provide or develop a sales network (including customer lists) for the sale of APU's products. To this day, APU lacks any sales network (including customer lists) for the sale of its products.

25. Defendants breached Paragraph 5(c) of the JV Agreement as they have failed to obtain any of the required approvals for APU's products, including FDA and NIOSH approvals. To this day, APU lacks any of these required approvals. Indeed, as far as HealthMax is aware, every application for FDA or NIOSH approval that APU submitted has been rejected.

26. Between June 2020 and December 2022, Defendants obfuscated the true nature of APU's lack of progress. For example, in or around September 2021, Defendants caused a document titled "American Product Unlimited Business Plan" (the "September 2021 Business Plan") to be created and transmitted to HealthMax. The September 2021 Business Plan severely exaggerated APU's progress and prospects for future success.

27. For example, Paragraph 1.6 of the September 2021 Business Plan, titled "Financial Plan," stated: "Our gross profit margin will exceed 100%, and we will achieve break-even with sales of $20,000,000. We expect to reach profitability by the middle of Year 2."

28. As another example, Paragraph 8.4 of the September 2021 Business Plan, titled "Sales forecast," stated: "We are well positioned to take on the available market in the U.S., our face masks will be sold and we are quite optimistic that we will meet our set target of generating enough income/profits from the first six months of mass production to grow the business and our clientele

base."  The same paragraph contained the following future sales projections: $20 million in sales in the First Fiscal Year, $40 million in sales in the Second Fiscal Year, and $100 million in sales in the Third Fiscal Year.

29. In or around September 2021, Defendants also caused a PowerPoint Presentation (the "September 2021 PowerPoint") to be created and transmitted to HealthMax.  The September 2021 PowerPoint severely exaggerated APU's progress and prospects for future success.

30. For example, the Business Development Plan section of the September 2021 PowerPoint stated: "Next milestone development goal – Mass production ready by end of the year [2021]."  That section also stated: "By end of the year, APU ready to mass production [sic] of U.S. certified masks to the markets."

31. The "Business overview" section of the September 2021 PowerPoint stated: "APU has successfully built essential components for the business including management team, key products, operations and market connections." That section also stated: "Currently pending FDA certification process, target date for mass production of medical grade masks in Q4 2021."

32. Based on these and other statements in the September 2021 Business Plan, the September 2021 PowerPoint, and other oral and written communications between the parties, HealthMax justifiably understood that APU's progress was

excellent, the company as well-positioned to begin mass producing and selling products in the very near future, and the company was likely to reach profitability within a short amount of time.

33. However, Defendants' statements were false and/or misleading when made. In truth, APU had no realistic path to launch, begin mass production, reach its forecasted sales, or obtain any of the required regulatory approvals, and lacked key components of the business.

34. In reliance on Defendants' false and/or misleading representations, HealthMax invested approximately $5 million in APU at various times between October 2021 and July 2022.

35. By September 2022, more than two years had elapsed since APU's inception, yet the company had not begun manufacturing or selling masks. For that reason, Wong traveled to the United States and requested that Lauture show her APU's product factory and provide her with an update on the status of APU's business. During this trip, Wong was informed for the first time that APU's NIOSH application had been rejected and that APU's products also had not been approved by the FDA.

36. In October 2022, Wong traveled to the United States again and met with Lauture, who informed Wong that APU's NIOSH application had been rejected again and claimed the company was running low on funds. This was

shocking to Wong, who understood that APU should still be in possession of sufficient funds to continue operations.

37. In November 2022, Lauture sent a message to Wong and again stated that APU was running low on funds.

38. In December 2022, Lauture unilaterally shut down APU's operations and dismissed all personnel working in the company's facility.  Lauture did not inform HealthMax that he intended to take such action.

39. Between December 2022 and the present, stunned by Lauture's actions, Wong and HealthMax have repeatedly reached out to Lauture in an effort to obtain information regarding the status of APU, its operations, its assets and capital, and other information regarding the company, but Lauture has not responded to their inquiries.  Instead, he has ignored HealthMax.

40. Recently, HealthMax sent a representative to APU's facility in New Jersey, who discovered that the facility was locked with materials and equipment still remaining inside.  On information and belief, Defendants have abandoned these assets, which HealthMax estimates to be worth hundreds of thousands or millions of dollars.

41. HealthMax also recently discovered that Defendants failed to pay the required taxes and/or fees to keep APU in good standing with the Delaware Secretary of State.

42. HealthMax is not aware of any legitimate way its investment could have vanished in such a short amount of time, particularly without APU even launching. On information and belief, Defendants mismanaged or misappropriated the entirety HealthMax's investment.

43. Defendants have, at all times, failed to keep HealthMax accurately informed regarding the status of APU, its property or assets, or HealthMax's investment.

## FIRST CAUSE OF ACTION
**(Breach of Contract)**

44. HealthMax re-alleges and incorporates herein the allegations set forth in all preceding and subsequent paragraphs.

45. The JV Agreement is a valid and enforceable contract.

46. HealthMax has performed all obligations required under the JV Agreement or is excused from performance.

47. The JV Agreement imposed certain obligations on AAH. Specifically, Paragraph 5 of the JV Agreement required AAH to "(a) Provide facility for the operation and management of the Venture; (b) Provide and develop the sales network (customer lists) for sales of the Venture's products; and (c) Obtain all required approvals for the Venture's products, including, but without limitation to FDA and NIOSH approvals."

48. Defendants breached the JV Agreement by failing to provide a facility for the operation and management of APU.

49. Defendants breached the JV Agreement by failing to provide and develop a sales network (customers lists) for APU's products.

50. Defendants breached the JV Agreement by failing to obtain all required approvals for APU's products, including but without limitation FDA and NIOSH approvals.

51. Paragraph 8 of the JV Agreement also prohibited any Member from having any interest in or engaging in any business, trade, profession, or employment that is in competition with the purpose of the Venture.

52. Defendants breached the JV Agreement by causing APU to enter into a lease agreement with Roswin, which was owned by, controlled by, or affiliated with Lauture.

53. As a result of Defendants' conduct, HealthMax suffered substantial damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
**(Breach of the Implied Covenant of Good Faith and Fair Dealing)**

54. HealthMax re-alleges and incorporates herein the allegations set forth in all preceding and subsequent paragraphs.

55. The JV Agreement is a valid and enforceable contract.

56. The JV Agreement imposes implied contractual terms on Defendants, including the duty to keep HealthMax informed regarding the status of APU; cooperate with HealthMax in supporting APU; solicit HealthMax's feedback with respect to material actions affecting APU; keep HealthMax informed regarding the use of its investment in APU; safeguard HealthMax's investment in APU; accurately describe the state of APU's business to HealthMax; and not take any actions that would impair or otherwise dissipate HealthMax's investment in APU.

57. Additionally, Paragraph 4 of the JV Agreement required HealthMax to deposit a portion of its capital contribution upon a determination that such payment is necessary to meet the operational needs of APU.  The JV Agreement imposed an implied contractual duty on Defendants not to misrepresent the state or progress of the business in soliciting or requesting such payment.

58. Defendants breached these implied terms through their conduct as set forth herein.

59. Defendants' breaches of the implied covenant of good faith are separate and distinct from their breaches of the JV Agreement and/or are pled in the alternative to HealthMax's claim for breach of the JV Agreement.

60. As a result of Defendants' conduct, HealthMax suffered substantial damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Breach of Fiduciary Duty)

61. HealthMax re-alleges and incorporates herein the allegations set forth in all preceding and subsequent paragraphs.

62. Defendants owed a fiduciary duty to HealthMax by virtue of the parties' JV Agreement.

63. Defendants breached their duties to HealthMax through their conduct as set forth herein.

64. As a result of Defendants' breaches, HealthMax suffered substantial damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Piercing the Corporate Veil)

65. HealthMax re-alleges and incorporates herein the allegations set forth in all preceding and subsequent paragraphs.

66. AAH is an instrumentality or alter ego of Lauture.

67. On information and belief, Lauture is the sole owner of AAH and/or is in total control of AAH.

68. On information and belief, AAH is inadequately capitalized and has never maintained any reserves or operating capital.

69. On information and belief, AAH at all times relevant is and was insolvent.

70. On information and belief, AAH observed few, if any, corporate formalities.

71. On information and belief, over the course of its existence, Lauture has siphoned and extracted substantially all funds from AAH more or less contemporaneously upon receipt by AAH, leaving AAH inadequately capitalized to carry out its business.

72. On information and belief, AAH has simply functioned as a façade for Lauture in his dealings with HealthMax.

73. On information and belief, Lauture dealt with HealthMax, in connection with the JV Agreement and with respect to APU, as though dealing directly in his individual capacity.

74. Lauture's utilization of AAH's corporate form was an inequitable use of the limited liability entity resulting in injustice or unfairness to HealthMax warranting piercing of the corporate veil.

## FIFTH CAUSE OF ACTION
(Accounting)

75. HealthMax re-alleges and incorporates herein the allegations set forth in all preceding and subsequent paragraphs.

76. Defendants owe HealthMax a fiduciary duty, and breached that duty, as set forth herein.

77. Defendants also owe HealthMax an implied duty of good faith, and breached that duty, as set forth herein.

78. Defendants owe HealthMax a duty to account for the usage of funds provided for the joint venture in which the parties engaged.

79. Defendants have breached their duty to account fairly and accurately for the use of funds invested by HealthMax and intended for APU.

80. HealthMax is entitled to an order requiring Defendants to permit HealthMax to review all of the books and records of Defendants and/or APU, requiring Defendants to account for the usage of all funds provided by HealthMax to Defendants and/or APU, and to provide any other equitable relief necessary for an accounting.

**PRAYER FOR RELIEF**

1. WHEREFORE, HealthMax respectfully requests the following relief:

   a. a judgment in favor of HealthMax, and against Defendants, for an amount to be determined by the Court, including pre- and post-judgment interest;

   b. an award of costs, attorneys' fees, costs, and expenses incurred by HealthMax in prosecuting this action;

   c. piercing the corporate veil and holding Lauture responsible for the obligations of AAH;

    d.    an order permitting HealthMax to review all of the books and records of Defendants and/or APU and requiring Defendants to account for the usage of all funds provided by HealthMax to Defendants and/or APU; and

    e.    for such other relief as the Court may deem just and equitable.

Dated: June 15, 2023

*/s/ Jennifer Mara*
Jennifer Mara, Esq.
**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

Eric A. Plourde, Esq.
(PHV application forthcoming)
Jack Shaw, Esq.
(PHV application forthcoming)
**PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101
Eric.plourde@procopio.com
Jack.shaw@procopio.com

*Attorneys for Plaintiff*
*HealthMax Medical Technology Ltd.*

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: June 15, 2023

*/s/ Jennifer Mara*
Jennifer Mara, Esq.
**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

Eric A. Plourde, Esq.
(PHV application forthcoming)
Jack Shaw, Esq.
(PHV application forthcoming)
**PROCOPIO, CORY, HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101
Eric.plourde@procopio.com
Jack.shaw@procopio.com

*Attorneys for Plaintiff
HealthMax Medical Technology Ltd.*

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, I certify that the matter in controversy is not the subject of any other action now pending in any court or in any arbitration or administrative proceeding.


Dated: June 15, 2023                             */s/ Jennifer Mara*
                                                 Jennifer Mara, Esq.