## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEALTHMAX MEDICAL TECHNOLOGY LTD., <br><br> Plaintiff, <br><br> v. <br><br> ALL AMERICAN HEALTH LLC and DANIEL LAUTURE, <br><br> Defendants. | Civil Action No.: 3:23-cv-03296 |

---

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUBSTITUTED SERVICE ON DEFENDANT DANIEL LAUTURE

---

Eric A. Plourde, Esq. (*pro hac vice*)
eric.plourde@procopio.com
Jack Shaw, Esq. (*pro hac vice*)
jack.shaw@procopio.com
**PROCOPIO, CORY,**
 **HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101

Jennifer Mara, Esq.
**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

*Attorneys for Plaintiff*
*HealthMax Medical Technology Ltd.*

## <u>**TABLE OF CONTENTS**</u>

I.   INTRODUCTION ........................................................................................ 1

II.  STATEMENT OF FACTS ........................................................................ 1

   A.   The Complaint .................................................................................1

   B.   HealthMax's Diligent Efforts to Serve Lauture ...........................3

III. LEGAL ARGUMENT ............................................................................... 3

   A.   HealthMax Should Be Permitted to Serve Lauture Through the Substitute Means ........................................................................................................3

   B.   HealthMax Should Be Permitted to Serve Lauture Through the Substitute Means ......................................................................................................13

   C.   Good Cause Exists to Extend the Time By Which HealthMax Must Effectuate Service on Lauture ..........................................................................14

IV.  CONCLUSION ......................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Argonaut-Midwest Ins. Co. v. Colt Logistics Inc.*,
  2018 WL 6716104 (D.N.J. Dec. 20, 2018)...........................................................4

*Braxton v. United States*,
  817 F.2d 238 (3d Cir. 1987)..............................................................................14

*Cunningham v. New Jersey*,
  230 F.R.D. 391 (D.N.J. 2005).................................................................... 15, 16

*Green v. Humphrey Elevator and Truck Co.*,
  816 F.2d 877 (3d Cir. 1987)..............................................................................14

*Guardian Life Ins. Co. of Am. v. Est. of Walter Matesic*,
  2016 WL 3763340 (D.N.J. July 14, 2016)..........................................................4

*H.D. Smith, LLC v. Prime Rite Corp.*,
  2016 WL 3606785 (D.N.J. July 5, 2016).................................................. 5, 6, 13

*Indagro, S.A. v. Nilva*,
  2014 WL 1515587 (D.N.J. April 17, 2014).......................................................15

*J.C. v. M.C.*,
  438 N.J. Super. 325 (Sup. Ct., Chancery Div., Ocean Cnty., 2013) ....................4

*Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*,
  2017 WL 4074284 (D.N.J. Sept. 14, 2017) .......................................................16

*Jumpp v. Jerkins*,
  2010 WL 715678 (D.N.J. Mar. 1, 2010)............................................................15

*Keystone Ins. Co. v. Anderson*,
  2021 WL 2852128 (D.N.J. July 8, 2021)........................................... 3, 4, 5, 6, 13

*McCurdy v. Am. Bd. of Plastic Surgery*,
  157 F.3d 191 (3d Cir. 1998)..............................................................................14

*MCI Telecommunications Corp. v. Teleconcepts, Inc.*,
  71 F.3d 1086 (3d Cir. 1995)..............................................................................15

*Modan v. Modan*,
  327 N.J. Super. 44 (App. Div. 2000) ...................................................................4

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)............................................................................................4

*Petrucelli v. Bohringer and Ratzinger*,
 46 F.3d 1298 (3rd Cir. 1995) ........................................................... 14, 15

*Prudential Ins. Co. of Am. v. Holladay*,
 2008 WL 1925293 (D.N.J. Apr. 30, 2008) ............................................6

*U.S. v. Ayer*,
 857 F.2d 881 (1st Cir. 1988) ..............................................................14

*United States v. 7 Monkeys, LLC*,
 2020 WL 3415578 (D.N.J. June 20, 2020) .........................................5, 6

*Zeo Health Ltd. v. Zoi Global, LLC*,
 2022 WL 1104979 (D.N.J. April 13, 2022) .........................................15

## Rules

Federal Rule of Civil Procedure 4(e)(1) ....................................................3

Federal Rule of Civil Procedure 4(m) .....................................................14

N.J. Ct. R. 4:4-4(a) ...................................................................................3

N.J. Ct. R. 4:4-4(b)(3) ..............................................................................3

N.J. Ct. R. 4:4-5(a)(3) .............................................................................13

## I.   <u>INTRODUCTION</u>

Pursuant to Federal Rule of Civil Procedure 4(e)(1) and 4(m), Plaintiff HealthMax Medical Technology Ltd. ("HealthMax" or "Plaintiff") respectfully requests that the Court enter an order permitting substitute modes of service on Defendant Daniel Lauture ("Lauture") and extending the time within which HealthMax must serve Lauture.

## II.   <u>STATEMENT OF FACTS</u>

### A.   <u>The Complaint</u>

On June 15, 2023, Plaintiff filed the instant lawsuit against Defendants All American Health LLC ("AAH") and Lauture.   ECF No. 1.   In the Complaint, HealthMax alleges that in or around May 2020, HealthMax and Lauture began negotiations regarding the formation of a joint venture for the manufacture and sale of facemask products in the United States.   *Id.* at 3 (¶ 6).   HealthMax had the capability to produce facemasks in China, but needed a trusted business partner to enter the United States market.   *Id.*   Lauture claimed to be the trusted partner that HealthMax needed.   *Id.* at 3 (¶ 7).

On or about June 16, 2020, HealthMax and AAH, Lauture's company, executed a Joint Venture Agreement (the "JV Agreement").   *Id.* at 4 (¶ 10).   The purpose of the JV Agreement was to permit the parties to organize, jointly invest in, and operate a joint venture enterprise for the manufacture, distribution, and sale

of various types of protective face masks and potentially other products or businesses.  *Id.*  The JV Agreement required the parties to form a corporation under the laws of the State of Delaware to be named American Products Unlimited, Inc. ("APU") with its principal place of business in the State of New Jersey.  *Id.* at 4 (¶ 11).  In or around June 2020, APU, a Delaware corporation, was created.  *Id.*

The owners ("Members") of APU are HealthMax (60% ownership) and AAH (40% ownership).  *Id.* at 4-5 (¶ 12).  Pursuant to Paragraph 4 of the JV Agreement, HealthMax agreed to invest $10,000,000.10 in exchange for 300,000 shares in APU and AAH agreed to invest $6,666,666.60 in exchange for 200,000 shares in APU.  *Id.*  Pursuant to the timing terms set forth in Paragraph 4 of the JV Agreement, HealthMax transmitted $5,000,000 to APU in or around July 2020 and the remainder of its investment at various times between October 2021 and July 2022.  *Id.*

Despite HealthMax's substantial investment, the Complaint alleges that AAH and Lauture breached the JV Agreement and their fiduciary duties to HealthMax, including but not limited to by failing to perform under the JV Agreement.  *See id.* at 6-17 (¶¶ 19-80).

## B.   HealthMax's Diligent Efforts to Serve Lauture

HealthMax served AAH with the Summons and Complaint through its registered agent on June 22, 2023.  ECF No. 8.  AAH has not responded to the Complaint.  Lauture executed the JV Agreement as the "Managing Member" of AAH.  ECF 1, Ex. A, at 3.  Thus, it is virtually certain that Lauture received notice of service of the Complaint on AAH.

HealthMax has been unable to serve Lauture individually despite diligent efforts to do so.  HealthMax relies on, and incorporates by reference, the Declaration of Eric A. Plourde ("Plourde Decl."), the Certification of Mark Sacripanti ("Sacripanti Certification"), and Certification of Robert Adams ("Adams Certification"), which demonstrate HealthMax's efforts.

## III.   LEGAL ARGUMENT

### A.   HealthMax Should Be Permitted to Serve Lauture Through the Substitute Means

Federal Rule of Civil Procedure 4(e)(1) provides that a person may be served following the rules of the state in which the district court is located.  N.J. Ct. R. 4:4-4(a) governs service of process in New Jersey.  Pursuant to the rule, the Court may allow for substitute modes of service as long as the proposed form of service is "provided by court order, consistent with due process of law."  N.J. Ct. R. 4:4-4(b)(3); *see also Keystone Ins. Co. v. Anderson*, 2021 WL 2852128, at *2

(D.N.J. July 8, 2021) ("[S]ubstitute or constructive service … is permitted, … when personal service cannot be effected within the state").

Before resorting to alternate means of substitute service, a "plaintiff must demonstrate a good faith effort to search and find a defendant whose address is unknown, or who is allegedly evading service." *Guardian Life Ins. Co. of Am. v. Est. of Walter Matesic*, 2016 WL 3763340, at *2 (D.N.J. July 14, 2016) (citation omitted). This requires that "a plaintiff follow up on information it possesses or can reasonably obtain, but it does not necessarily mean a plaintiff must take every conceivable action." *Argonaut-Midwest Ins. Co. v. Colt Logistics Inc.*, 2018 WL 6716104, at *1 (D.N.J. Dec. 20, 2018) (citing *Modan v. Modan*, 327 N.J. Super. 44, 49 (App. Div. 2000)). In assessing what constitutes an appropriate level of diligence, New Jersey courts recognize that "there is no objective formulaic standard" and that "the showing of diligence in a given case must rest on its own facts and no single formula nor mode of search can be said to constitute due diligence in every case." *J.C. v. M.C.*, 438 N.J. Super. 325, 329-30, 103 A.3d 318 (Sup. Ct., Chancery Div., Ocean Cnty., 2013) (citation omitted). Courts further recognize that "in the case of persons missing or unknown, indirect service may be all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Keystone Ins. Co.*, 2021 WL 2852128, at *2 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Courts in this district have routinely permitted substitute modes of service under circumstances analogous to the ones present here.  For example, in *Keystone Insurance Co.*, the Court found good cause to grant the plaintiff's motion to effectuate service by publication where plaintiffs' counsel had, without avail, (i) employed a process server to attempt personal service at two different addresses on multiple occasions, (ii) obtained a comprehensive investigative report to ascertain another address for defendant, and (iii) submitted an inquiry with the Postal Service in an attempt to obtain defendant's correct address.  2021 WL 2852128, at *3.  The Court recognized that "although plaintiff might not have taken every conceivable action, its conduct demonstrate[d] that it followed up on information it possessed or could have reasonably obtained." *Id.*

Similarly, in *H.D. Smith, LLC v. Prime Rite Corp.*, the court allowed for service by publication where plaintiff's counsel's affidavit indicated, in part, that (i) a process server was unable to personally serve a defendant at an address believed to be associated with defendant, (ii) the defendant's phone number had been disconnected, and (iii) postal searches could not yield any new address information.  2016 WL 3606785, at *2 (D.N.J. July 5, 2016).

Likewise, in *United States v. 7 Monkeys, LLC*, the Court cited in part Plaintiff's counsel's "in-depth internet search, which consisted of a search of public records, including motor vehicle records, criminal history, civil judgment

searches, and voter registrations, and an Accurint [skip trace] person's search." 2020 WL 3415578, at *2 (D.N.J. June 20, 2020) (allowing substitute service on three separate defendants).   Finding that plaintiff had exhausted all reasonable options for personal service, the Court permitted plaintiff to proceed with service by publication. *Id.* at 3.

Here, as was the case in the *Keystone Insurance Co.*, *H.D. Smith*, and *7 Monkeys* matters, "all of the statutory modes of service [have been] diligently exhausted without successful service and ... all reasonable efforts to locate the defendant have failed."   *Keystone Ins. Co.*, 2021 WL 2852128, at *3 (citing *Prudential Ins. Co. of Am. v. Holladay*, 2008 WL 1925293, at *3 (D.N.J. Apr. 30, 2008)).   Among other things, HealthMax has engaged in the following diligent efforts to locate and serve Lauture:

- On June 7, 2023, HealthMax's lead counsel directed his firm's Director of Knowledge Management and Senior Research and Knowledge Analyst (*i.e.*, the firm's two primary researchers) to investigate the location and contact information for Lauture.  Plourde Decl., ¶ 3.  They conducted substantial research and provided counsel, among other materials, with a report that was over 100 pages

(the "Investigative Report").[1]   *Id.*   Their research included a comprehensive review of publicly available records related to addresses, email addresses, political donations, real estate transactions, motor vehicle records, lawsuit records, liens & judgments, criminal history, and many other categories of information. *Id.*

- In addition to the Investigative Report, counsel's research team provided counsel with filings from legal proceedings involving individuals going by Lauture's name. *Id.* ¶ 4. One such filing was titled "Brief in Support of Emergent Application to Stay Removal After Sheriff's Sale" (the "Eviction Brief"). *Id.* ¶ 4; Ex. A.

- The case in which the Eviction Brief was filed appears to have been initiated by Deutsche Bank National Trust Company ("Deutsche Bank") against two individuals, Alexander Cane and William Suser, in the Superior Court of New Jersey, Hudson County. *Id.* ¶ 5; Ex. A. Based on the Eviction Brief, it appears that Deutsche Bank foreclosed on a home owned by Mr. Cane and Mr. Suser located at 522 Harbor Place, West New York, New Jersey. *Id.* ¶ 5; Ex. A. Review of the Eviction Brief suggests that Lauture and his wife had been living at

---

[1] HealthMax is not submitting a copy of the Investigative Report as an exhibit out of an abundance of caution, as some of the information appears personal in nature.

that address since at least January 2018. *Id.* ¶ 5; Ex. A. The Eviction Brief requested that the Court prevent Lauture and his wife from being evicted from the property on May 31, 2023 on the ground that the Lautures were not provided with proper notice. *Id.* ¶ 5; Ex. A.

- The address referenced in the Eviction Brief – 522 Harbor Place, West New York, New Jersey – matches the address that appeared most repeatedly in the Investigative Report prepared by HealthMax's counsel's internal research team. *Id.* ¶ 6. Based on these facts, it appears that until recently, Lauture and his wife were living at that address. *Id.* ¶ 6.

- On July 7, 2023, HealthMax's counsel asked his research team to perform a second search to see if they could identify a second address for Lauture. *Id.* ¶ 7. They provided counsel with an updated report that was over 100 pages (the "Second Investigative Report"). *Id.* However, they were unable to identify another address for Lauture. *Id.*

- On or about July 7, 2023, HealthMax's counsel called the office of Edward G. Engelhart, Esq., the attorney who filed the Eviction Brief on behalf of Lauture and his wife in the lawsuit involving Deutsche

Bank.  *Id.* ¶ 8.  Counsel was unable to reach him by phone, but his office provided me with an email address: eengelhart@aol.com.  *Id.*

- On July 7, 2023, HealthMax's counsel emailed Mr. Engelhart.  *Id.* ¶ 9; Ex. B.  His intention was to ask Mr. Engelhart if he still represents Lauture or if he could assist HealthMax in finding him.  *Id.* ¶ 9. HealthMax's counsel attached a copy of HealthMax's Complaint.  *Id.* ¶ 9; Ex. B.  To date, counsel has not received any response to this email.  *Id.* ¶ 9.

- On or before July 7, 2023, HealthMax's counsel performed a review of documents relevant to this dispute that were provided to him by HealthMax, including certain email communications, for the purpose of attempting to identify any email addresses that Lauture uses.  *Id.* ¶ 10.  Counsel identified three such addresses during his review: daniel@apuusa.com, dannylauture@gmail.com, and dlauture@comcast.net.  *Id.*

- On July 7 2023, HealthMax's counsel emailed each of these three email addresses.  *Id.* ¶ 11; Ex. C.  Counsel's intention was to ask Lauture if he is represented by counsel, if he would accept service of the Complaint, and generally to make contact with him.  *Id.* ¶ 11. Counsel has received no response to his email.  *Id.*

9

- On July 24, 2023, HealthMax's counsel called Mr. Engelhart's office and he answered the phone. *Id.* ¶ 12. The conversation was short. *Id.* Mr. Engelhart indicated that he believed he received HealthMax's counsel's July 7, 2023 email, but he asked that he re-send it. *Id.* Mr. Engelhart was unable to confirm whether he represents Lauture for purposes of this lawsuit. *Id.* He was not authorized to accept service. *Id.* HealthMax's counsel forwarded his prior email. *Id.* ¶ 12; Ex. D.

- HealthMax engaged a process server in an attempt to serve Lauture. Plourde Decl., ¶ 13. The Process Server was Mark Sacripanti of Guaranteed Subpoena Service, Inc. Sacripanti Certification, ¶ 1. After three attempts, Mr. Sacripanti was unable to personally serve Lauture. *Id.* ¶ 2.

- Mr. Sacripanti attempted to serve Lauture at the address 522 West Harbor Place, West New York, NJ 07093, on June 16, 2023 and June 20, 2023. *Id.* ¶¶ 3-5. He was unable to effect personal service on either of these occasions. *Id.* On June 16, 2023, Mr. Sacripanti left a copy of the Summons and Complaint at the address. *Id.* ¶ 3. Shortly after leaving the address, Mr. Sacripanti received an incoming call on his cell phone from Mr. Lauture, who advised him that he was aware of the lawsuit and instructed him to leave a copy of the Summons and

Complaint at his door.  *Id.* ¶ 4.  Moreover, when Mr. Sacripanti returned to the address on June 20, 2023, he affixed another copy of the Summons and Complaint to the front door.  *Id.* ¶ 5.

- On June 26, 2023, Guaranteed Subpoena Inc. sent copies of the Summons and Complaint to the address via certified and regular mail. *Id.* ¶ 6.

- Mr. Sacripanti returned for a third time on June 29, 2023 and was advised via the Ring Doorbell system that Lauture was away on vacation until after July 4, 2023.  *Id.* ¶ 7.

- Mr. Sacripanti returned for a fourth time on July 5, 2023, and was advised by a moving company's staff that the home went into foreclosure and that Lauture no longer resided there.  *Id.* ¶ 8.

- HealthMax also engaged a private investigator in an attempt to locate and serve Lauture.  Plourde Decl., ¶ 14.  The private investigator was Bob Adams of MCR Strategies LLC.  Adams Certification, ¶¶ 1-2.

- On July 19, 2023, Mr. Adams visited Lauture's last known address located at 522 West Harbor Place, West New York, NJ 07093.  *Id.* ¶ 3.  His background researched indicated that Lauture resided at this address for approximately ten years.  *Id.*  Upon arrival, Mr. Adams

11

observed a realtor-style lockbox on the door and that the locks to the home were recently changed. *Id.* ¶ 4.

- While it was difficult to ascertain if the home was still occupied, there was no response when Mr. Adams (twice) rang the Ring Doorbell located on the front steps of the home. *Id.* ¶ 5.

- During that time, Mr. Adams spoke to an individual named Michael Perebzak of MP2 Capital LLC, who approached the home. *Id.* ¶ 7. Mr. Perebzak indicated that he was hired by Bank of America to conduct an appraisal of 522 West Harbor Place in West New York and confirmed the home was vacant and in foreclosure. *Id.*

- Shortly thereafter, a realtor with Christie's International Real Estate, Mr. Kunal Arora, stopped by the home. *Id.* ¶ 8. After Mr. Adams spoke with Mr. Arora, it was clear he knew Lauture, but Mr. Arora was unaware of where Lauture now lived. *Id.*

- Following this visit, Mr. Adams was unable to locate a new address for Lauture, nor was he able to serve Lauture. *Id.* ¶ 9.

Unfortunately, despite HealthMax's extreme diligence and expenditure of substantial resources, these efforts have failed and HealthMax has been unable to serve Lauture.

**B.      HealthMax Should Be Permitted to Serve Lauture Through the Substitute Means**

As set forth in the proposed order, HealthMax requests that the Court permit it to serve Lauture by completing each of the following steps.

First, HealthMax will publish the notice from the Court of this action once a week for three consecutive weeks in two daily newspapers, the Star Ledger and Bergen Record.  This proposal alone conforms to N.J. Ct. R. 4:4-5(a)(3) and is in accord with precedent.  *See, e.g.*, *Keystone Ins. Co.*, 2021 WL 2852128, at *3 (requiring plaintiff to publish consecutive notice in two newspapers of general circulation once a week for three weeks); *H.D. Smith*, 2016 WL 3606785, at *4 (same).

Second, HealthMax will email copies of the Complaint and Summons to Lauture's counsel in the Deutsche Bank case at the email address: eengelhart@aol.com.

Third, HealthMax will email copies of the Complaint and Summons to Lauture at each of the following three email addresses: daniel@apuusa.com, dannylauture@gmail.com, and dlauture@comcast.net.

Completion of these steps will essentially guarantee that Lauture receives notice of the Complaint and Summons, to the extent he has not received notice already.

**C.     Good Cause Exists to Extend the Time By Which HealthMax Must Effectuate Service on Lauture**

HealthMax should be granted a 120-day extension of time to effect service on Lauture because, despite reasonable diligence, personal service may not be able to be completed within the requisite period.

A plaintiff generally must serve a defendant within 90 days after the complaint is filed.  Fed. R. Civ. P. 4(m).  However, "[t]he time limit is not absolutely inflexible."  *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987).[2]  Rather, if a defendant is not served within the above timeframe, the district court must first determine whether good cause exists for a plaintiff's failure to effect timely service.  *See McCurdy v. Am. Bd. of Plastic Surgery*, 157 F.3d 191, 196 (3d Cir. 1998).  If good cause exists, then the court "must extend the time for service for an appropriate period."  Fed. R. Civ. P. 4(m); *see also Green v. Humphrey Elevator and Truck Co.*, 816 F.2d 877, 880 (3d Cir. 1987) (the "good cause" exception protects "diligent plaintiffs who, though making every effort to comply with the dictates of the rule, nonetheless exceed the [requisite] limit for service").  Even if good cause does not exist, the district court may still extend time after considering additional factors, such as "if the applicable statute of limitations would bar the refiled action, or if the defendant is evading service or

---

[2] "Congress . . . intended [Rule 4(m)] to be a useful tool for docket management, not an instrument of oppression."  *U.S. v. Ayer*, 857 F.2d 881, 885-86 (1st Cir. 1988).

conceals a defect in attempted service." *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1305-06 (3rd Cir. 1995); *see also Jumpp v. Jerkins*, 2010 WL 715678, at *11-12 (D.N.J. Mar. 1, 2010) (finding that a discretionary grant of additional time to serve process was warranted even though plaintiff had not established good cause to extend).

In considering whether good cause exists, "the primary focus is on the plaintiff's reasons for not complying with the time limit in the first place." *MCI Telecommunications Corp. v. Teleconcepts, Inc.*, 71 F.3d 1086, 1097 (3d Cir. 1995); *see also Zeo Health Ltd. v. Zoi Global, LLC*, 2022 WL 1104979, at *2 (D.N.J. April 13, 2022).  The Third Circuit has advised district courts to consider (1) whether the plaintiff undertook reasonable efforts in attempting service of process, (2) whether the defendant will be prejudiced by the lack of timely service, and (3) whether the plaintiff moved to enlarge the time to serve.  *See Indagro, S.A. v. Nilva*, 2014 WL 1515587, at *2 (D.N.J. April 17, 2014) (citation omitted).  Each of these factors warrants extending the service deadline.

First, as set forth above, HealthMax has undertaken not only reasonable, but extraordinary, efforts to attempt to serve Lauture.

Second, there is no possible prejudice to Lauture of extending the time to serve him with the Complaint and Summons.  In this regard, "prejudice involves impairment of defendant's ability to defend on the merits, rather than

foregoing ... a procedural or technical advantage." *Cunningham v. New Jersey*, 230 F.R.D. 391, 394 (D.N.J. 2005) (citation omitted). This lawsuit is in its infancy and once served, Lauture will have a full opportunity to defend himself.

Third, courts routinely find good cause to extend even where a plaintiff waits to request an extension until *after* the deadline to serve has passed. *See, e.g.*, *Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 2017 WL 4074284, at *1-2, 5 (D.N.J. Sept. 14, 2017) (finding good cause to extend despite the fact that plaintiff waited more than five months after the filing of the Complaint to present a motion to extend time). By contrast, HealthMax has proactively sought an extension *within* the 90-day deadline

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, HealthMax respectfully requests that the Court grant the instant motion in its entirety.

Dated: August 1, 2023

*/s/ Jennifer Mara*
Jennifer Mara, Esq.
**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

Eric A. Plourde, Esq. (*pro hac vice*)
Jack Shaw, Esq. (*pro hac vice*)
**PROCOPIO, CORY,
HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101

16

Eric.plourde@procopio.com
Jack.shaw@procopio.com