# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| HEALTHMAX MEDICAL TECHNOLOGY LTD.,<br><br>       Plaintiff,<br><br>   v.<br><br>ALL AMERICAN HEALTH LLC and DANIEL LAUTURE,<br><br>       Defendants. | Civil Action No.: 3:23-cv-03296 |

## BRIEF IN SUPPORT OF PLAINTIFF'S
## ORDER TO SHOW CAUSE WITH TEMPORARY RESTRAINTS

**BALDASSARE & MARA, LLC**
75 Livingston Avenue, Suite 101
Roseland, NJ 07068
T: (973) 200-4066
F: (973) 556-1076
E: jmara@mabalaw.com

Eric A. Plourde, Esq. (*pro hac vice*)
Jack Shaw, Esq. (*pro hac vice*)
**PROCOPIO, CORY,**
 **HARGREAVES & SAVITCH LLP**
525 B Street, Suite 2200
San Diego, CA 92101

*Attorneys for Plaintiff*
*HealthMax Medical Technology Ltd.*

# **TABLE OF CONTENTS**

I.   INTRODUCTION                                                                       1

II.  STATEMENT OF FACTS                                                        4

  A. HealthMax's Allegations in the First Amended Complaint        4

  B. HealthMax's Diligent Efforts to Control APU's Bank Accounts and
  Evidence Supporting This Motion                                               6

III.   LEGAL ARGUMENT                                                           11

  A. HealthMax is Likely to Succeed on the Merits                          12

  B. Irreparable Harm Will Result From HealthMax's Lack of Control and the
  Likely Collapse of APU's Business                                            14

  C. The Balance of the Equities Weighs in Favor of Injunctive Relief    17

  D. Injunctive Relief is in the Public Interest                                 18

IV. CONCLUSION                                                                   19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7-Eleven, Inc. v. Upadhyaya*,
  926 F. Supp. 2d 614 (E.D. Pa. 2013) ...................................................................15

*ACE American Ins. Co. v. Wachovia Ins. Agency Inc.*,
  2008 WL 4630486 (D.N.J. Oct.17, 2008) ...........................................................18

*Am. Ex. Travel Related Servs., Inc. v. Sidamon-Eristoff*,
  669 F.3d 359 (3d Cir. 2012)..................................................................................12

*Citibank N.A. v. Kyle*,
  2015 WL 3755788 (E.D. Pa. June 16, 2015).......................................................18

*Doran v. Salem Inn*,
  422 U.S. 922 (1975).............................................................................................16

*Jurista v. Amerinox Processing, Inc.*,
  492 B.R. 707 (D.N.J. 2013) .................................................................................11

*Juul Labs, Inc. v. 4X PODS.*,
  439 F. Supp. 3d 341 (D.N.J. 2020).......................................................................11

*Kos Pharms., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004).................................................................................14

*Minard Run Oil Co. v. U.S. Forest Serv.*,
  670 F.3d 236 (3d Cir. 2011).................................................................................17

*Nat. & Tasty, LLC v. Parnes*,
  2015 WL 4757181 (D.N.J. Aug. 10, 2015) .........................................................15

*Singer Mgmt. Consultants, Inc. v. Milgram*,
  650 F.3d 223 (3d Cir. 2011).................................................................................12

*Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, *reconsideration denied*, No. CV 21-634-KSM,
  2022 WL 16944000 (E.D. Pa. Nov. 14, 2022) ....................................................13

*Trustees of Gen. Assembly of Church of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, No. 21-1662,
  2021 WL 6101254 (3d Cir. Dec. 21, 2021)..........................................................13

*Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*,
  527 F. Supp. 3d 722 (E.D. Pa. 2021) ...................................................................13

**Rules**

Fed. R. Civ. P. 65 ....................................................................................................11

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and Local Civil Rule 65.1, Plaintiff HealthMax Medical Technology Ltd. ("HealthMax" or "Plaintiff") hereby submits this memorandum in support of its Order to Show Cause Seeking Temporary Restraints.

## I.   **INTRODUCTION**

Pursuant to the Joint Venture Agreement (the "JV Agreement") between HealthMax and Defendants All American Health LLC ("AAH") and Daniel Lauture ("Lauture"), HealthMax has the right to appoint a controlling majority to the Board of Directors of the joint venture formed by the parties, American Products Unlimited, Inc. ("APU").  HealthMax appointed a controlling majority, which recently passed two Written Consents of the Directors in Lieu of a Meeting, electing Xian Zhang as APU's Chief Financial Officer ("CFO"), vesting the CFO with exclusive power to control the company's bank accounts, and authorizing the removal of Lauture, APU's CEO, from the company's bank accounts.

However, the banks – specifically PNC Bank and TD Bank – have been unwilling to take steps to recognize or implement these Board Consents, despite repeated requests that they do so.  Each bank has stated that a Court order will be necessary to effect the change unless Lauture consents.  Meanwhile, HealthMax has repeatedly reached out to Lauture, but he has not responded to HealthMax's inquiries for months.   For these reasons, HealthMax requests a temporary

injunction to preserve the status quo with respect to the bank accounts and a preliminary injunction preventing any person, other than as authorized by APU's Board of Directors, from controlling or accessing APU's bank accounts. Injunctive relief is necessary and warranted.

First, HealthMax is likely to succeed on the merits of its claims. HealthMax seeks a declaratory judgment that APU's bank accounts are subject to the sole control of the CFO, subject to oversight by the Majority of the Board of Directors, and that neither Lauture nor any other unauthorized persons shall have such control or access. The parties' JV Agreement expressly provides HealthMax with the right to appoint a majority to APU's Board of Directors. HealthMax merely asks the Court to assist it in protecting its contractual right to exercise majority control over APU. Further, HealthMax is likely to succeed on its remaining claims, based on Defendants' egregious conduct, abandonment of their duties, and wrongful dissipation of HealthMax's substantial investment.

Second, HealthMax will suffer irreparable harm if no injunction is issued. Courts within the Third Circuit have repeatedly held that a parties' lack of control over a business, despite having the right to such control, constitutes irreparable harm. Here, HealthMax is being denied the right to exercise control over APU to which it is legally entitled. Additionally, both the Supreme Court and Third Circuit have recognized that the likely collapse of a business constitutes irreparable

2

harm.   Here, APU is currently a rudderless business, with the CEO having abandoned the business altogether and the Board of Directors being effectively held hostage by his refusal to respond to their inquiries and their inability to control the company's capital and bank accounts.   Without injunctive relief, the company will continue on without any leadership for months or years and will almost certainly collapse or be irreversibly damaged.

Third, the balance of the equities weighs strongly in favor of injunctive relief.   HealthMax entrusted Lauture with millions for the purpose of building a joint venture, but Lauture entirely abused that trust, failed to provide HealthMax with timely or accurate updates, and ultimately shut down the business abruptly and without warning.   HealthMax has lost 100% of its investment, yet Lauture refuses to respond to its inquiries.   Despite having negotiated the power to control APU, HealthMax is being flatly denied that right.   Further, there will be no harm to Lauture if injunctive relief is granted.   HealthMax merely asks for the Court's assistance in exercising its legal and legitimate power to control APU's Board of Directors.   Lauture lacks any reason why HealthMax should be denied this contractual authority, to which Defendants expressly agreed.

Finally, injunctive relief is in the public interest.   It is well-established that the public interest weighs in favor of enforcing private contracts like the JV Agreement.   The public interest also supports the protection of business

3

investments.  Both purposes would be served by granting HealthMax injunctive relief here.

For these reasons, HealthMax respectfully requests that the Court grant the instant motion in its entirety.

## II.   **STATEMENT OF FACTS**

### A.   **HealthMax's Allegations in the First Amended Complaint**

HealthMax filed its Complaint on June 15, 2023.  ECF No. 1.  On August 14, 2023, HealthMax filed its First Amended Complaint ("FAC").  ECF No. 12.  In the FAC, HealthMax alleges that in or around May 2020, HealthMax and Lauture began negotiations regarding the formation of a joint venture for the manufacture and sale of facemask products in the United States.  *Id.* at 3 (¶ 6).  HealthMax had the capability to produce facemasks in China, but needed a trusted business partner to enter the United States market.  *Id.*  Lauture claimed to be the trusted partner that HealthMax needed.  *Id.* at 3 (¶ 7).

On or about June 16, 2020, HealthMax and AAH, Lauture's company, executed a Joint Venture Agreement (the "JV Agreement").  *Id.* at 4 (¶ 10).  The purpose of the JV Agreement was to permit the parties to organize, jointly invest in, and operate a joint venture enterprise for the manufacture, distribution, and sale of various types of protective face masks and potentially other products or businesses.  *Id.*  The JV Agreement required the parties to form a corporation

under the laws of the State of Delaware to be named American Products Unlimited, Inc. (APU) with its principal place of business in the State of New Jersey. *Id.* at 4 (¶ 11).  In or around June 2020, APU, a Delaware corporation, was created. *Id.*

The owners ("Members") of APU are HealthMax (60% ownership) and AAH (40% ownership).  *Id.* at 4-5 (¶ 12).  Pursuant to Paragraph 4 of the JV Agreement, HealthMax agreed to invest $10,000,000.10 in exchange for 300,000 shares in APU and AAH agreed to invest $6,666,666.60 in exchange for 200,000 shares in APU.  *Id.*  Pursuant to the timing terms set forth in Paragraph 4 of the JV Agreement, HealthMax transmitted $5,000,000 to APU in or around July 2020 and the remainder of its investment at various times between October 2021 and July 2022. *Id.*

Despite HealthMax's substantial investment, the FAC alleges that AAH and Lauture breached the JV Agreement and their fiduciary duties to HealthMax, including but not limited to by failing to perform under the JV Agreement.  *See id.* at 6-17 (¶¶ 19-95).  The FAC also seeks a declaratory judgment (a) that the APU bank accounts are subject to the sole control of the CFO, subject to oversight by the Majority of the Board of Directors, and (b) that neither Lauture, nor anyone else not authorized by the Board of Directors, shall have any control over, or access to, the APU bank accounts.

**B.** **HealthMax's Diligent Efforts to Control APU's Bank Accounts and Evidence Supporting This Motion**

A true and correct copy of the JV Agreement is attached to the Declaration of Eric A. Plourde ("Plourde Decl.") as Exhibit A.  The JV Agreement reflects the parties' respective investments and ownership percentages in APU as described in above and in the FAC.  Plourde Decl., Ex. A at ¶ 4.  The JV Agreement also reflects the constitution of the Board of Directors and the Voting Rights of the parties.  *Id.*, Ex. A at ¶ 6.

Among other things, the JV Agreement reflects that HealthMax is the majority owner of APU; APU shall be governed by a five member Board of Directors; HealthMax shall be entitled to appoint three of the five directors (a majority); matters requiring the approval of the Board of Directors "shall be decided by a simple majority of the Board"; the CFO position shall be voted on and will only "require a majority vote"; and important events "shall be decided by the Board of Directors by simple majority."  *Id.*

On May 30, 2023, HealthMax appointed three Directors to APU's Board: Zoe Wong, Tommy Wong, and Jianyi Lin.  *Id.*, Ex. B.  These three HealthMax-appointed Directors constitute a voting majority on APU's Board of Directors (the "Majority").  *See id.*

On July 7, 2023, the Board of Directors of APU executed two Written Consents of the Directors in Lieu of a Meeting (the "Board Consents"), electing

6

Xian Zhang as APU's Chief Financial Officer ("CFO"), vesting the CFO with exclusive power to control the company's bank accounts, and authorizing the removal of Lauture from the company's bank accounts. *Id.*, Ex. C; Ex. D.

APU has two primary bank accounts, one with PNC Bank (the "PNC Account") and one with TD Bank (the "TD Bank Account"). *Id.*, ¶ 6; Ex. E; Ex. F. Both prior to and following execution of the Board Consents, and despite numerous requests, PNC Bank and TD Bank have been unwilling to take steps to recognize or implement the Board Consents, despite repeated requests that they do so. *Id.*, ¶ 9.

Specifically, on or about May 15, 2023, Julian Zou, corporate counsel to HealthMax, called PNC Bank to learn how to add the CFO to the PNC Account and remove Lauture from the account. *Id.*, ¶ 10. However, none of their representatives provided a definitive answer regarding Mr. Zou's questions or indicated they could assist him. *Id.*

On or about May 15, 2023, Mr. Zou also called TD Bank to learn how to add the CFO to the TD Account and remove Lauture from the account. *Id.*, ¶ 11. However, none of their representatives provided a definitive answer regarding Mr. Zou's questions or indicated they could assist him. *Id.*

On or about May 30, 2023, Mr. Zou spoke with a representative from PNC Bank again. *Id.*, ¶ 12. The representative indicated that in order to add a signatory

to the PNC Account, the bank would need a board resolution or similar document authorizing same and permission of the primary signatory (*i.e.*, Lauture) and the second signatory (*i.e.*, the CFO).  *Id.*  The representative also indicated that in order to remove and replace the existing signatory, the bank would need a board resolution or similar document authorizing same and permission of the prior signatory (*i.e.*, Lauture) and the new signatory (*i.e.*, the CFO).  *Id.*  PNC Bank was not willing to add the CFO to the PNC Account or remove Lauture from the account without Lauture's consent.  *Id.*

On or about May 30, 2023, Mr. Zou spoke with a representative from TD Bank again.  *Id.*, ¶ 13.  The representative indicated that he could not assist Mr. Zou in requesting to add or remove a signatory from the TD Account.  *Id.*

On July 13, 2023, Mr. Zou spoke with a representative from PNC Bank again, this time in person.  *Id.*, ¶ 14.  The representative was Ms. Barbara J., the Business Center Assistant Branch Manager of PNC Bank in Fremont, CA.  *Id.*  Mr. Zou informed Ms. Jimenez of the Board Consents.  *Id.*  In response, Ms. Jimenez told Mr. Zou that in order to either add or remove a signatory from the bank accounts, the person whose signatures will be added or removed must approve the change and must be physically present to sign the necessary documentation.  *Id.*  Mr. Zou showed Ms. Jimenez copies of the Board Consents, but was told these documents were not sufficient for her to process the request.  *Id.*  Mr. Zou asked if

it was possible to place a hold or freeze on the PNC Account temporarily, and she stated she could not do so without authorization. *Id.*

On July 13, 2023, Mr. Zou spoke with a representative from TD Bank again on the phone. *Id.*, ¶ 15. Mr. Zou could not visit a branch office because TD Bank does not have branch offices in California. *Id.* Mr. Zou informed the representative of the Board Consents. *Id.* In response, the representative told Mr. Zou that he could not add or remove any signatories from the TD Account based on the information provided. *Id.*

On July 26, 2023, HealthMax's litigation counsel in this action, Eric A. Plourde, spoke with a representative from PNC Bank. *Id.*, ¶ 17. The representative's name was Kevin (no last name or initial given). Mr. Plourde informed Kevin of the Board Consents and asked how to go about removing Lauture from the PNC Account and adding the CFO to the account. *Id.* He stated that the bank would need the permission of the prior signatory (*i.e.*, Lauture) and the new signatory (*i.e.*, the CFO). *Id.* PNC Bank was not willing to add the CFO to the PNC Account or remove Lauture from the account without Lauture's consent. *Id.* Mr. Plourde explained that there is dispute going on between APU's majority owner and Lauture and he did not believe it would be possible to obtain Lauture's consent. *Id.* Kevin stated that without Lauture's consent, HealthMax would likely need to provide the bank with a Court order effecting the change. *Id.*

9

On July 26, 2023, Mr. Plourde spoke with a representative from TD Bank. *Id.*, ¶ 18.  The representative was Rachel S.  *Id.*  She stated she is a supervisor and her title is Resource Officer in the Small Business Department. *Id.*  Mr. Plourde informed Ms. S. of the Board Consents and asked how to go about removing Lauture from the TD Account and adding to the CFO to the account.  *Id.*  She stated that the bank would need a board resolution authorizing same and permission of the prior signatory (*i.e.*, Lauture) and the new signatory (*i.e.*, the CFO).  TD Bank was not willing to add the CFO to the TD Account or remove Lauture from the account without Lauture's consent.  *Id.*  Mr. Plourde explained that there is dispute going on between APU's majority owner and Lauture and I did not believe it would be possible to obtain Lauture's consent.  *Id.*  Ms. S. stated that without Lauture's consent, HealthMax would likely need to provide the bank with a Court order effecting the change.  *Id.*

On August 14, 2023, Mr. Plourde tried one more time to change the name on APU's PNC Account.  *Id.*, ¶ 19.  He spoke to an Account Representative named Lisa on the phone.  *Id.*  However, she indicated that a Court order would be necessary.

On August 14, 2023, Mr. Plourde tried one more time to change the name on APU's TD Account.  *Id.*, ¶ 20.  He spoke to an Account Representative named

Rebecca on the phone. *Id.* However, she indicated that a Court order would be necessary.

HealthMax has additionally taken numerous steps to attempt to conduct Lauture, but he has not responded to HealthMax's inquiries. *See generally* ECF No. 11-1 (requesting that the Court permit substitute service on Lauture).

It is critical that Lauture's name be removed from the PNC Account and TD Accounts. In the Declaration of Zoe Wong ("Wong Decl.") submitted herewith, Ms. Wong provides a detailed recitation of the facts giving rise to HealthMax's claims and the reasons why injunctive relief is necessary. Wong Decl., ¶¶ 2-33.

## III.   <u>LEGAL ARGUMENT</u>

Rule 65 of the Federal Rules of Civil Procedure permits entry of a temporary restraining order and/or preliminary injunction. Fed. R. Civ. P. 65. "A plaintiff seeking a preliminary injunction must establish: [1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest." *Juul Labs, Inc. v. 4X PODS.*, 439 F. Supp. 3d 341, 350 (D.N.J. 2020) (collecting cases). "Applications for temporary restraining orders are governed by the same standards as motions for preliminary injunctions." *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 777 n.53 (D.N.J. 2013).

**A.**   <u>**HealthMax is Likely to Succeed on the Merits**</u>

To obtain injunctive relief, a plaintiff need only show a reasonable probability of success on the merits. *See, e.g.*, *Am. Ex. Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012); *see also Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) ("[T]he plaintiff in [TRO and preliminary injunction contexts] need only to show a likelihood of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted a relief.  A likelihood does not mean more likely than not.").  HealthMax is likely to succeed on the merits of its claims.

First, HealthMax seeks a declaratory judgment (a) that the APU bank accounts are subject to the sole control of the CFO, subject to oversight by the Majority of the Board of Directors, and (b) that neither Lauture, nor anyone else not authorized by the Board of Directors, shall have any control over, or access to, the APU bank accounts.  ECF No. 12 at 20-21 (¶¶ 90-97).  HealthMax is likely to succeed on this claim.  HealthMax is entitled to appoint a majority to APU's Board of Directors.  Plourde Decl., Ex. A at ¶ 6.   On May 30, 2023, HealthMax did so. *Id.*, Ex. B.  The Majority then executed the two Board Consents vesting the CFO with exclusive power to control the company's bank accounts, and authorizing the removal of Lauture from the company's bank accounts. *Id.*, Ex. C; Ex. D.  Each of these actions is well within the power granted to HealthMax by contract and law.

Thus, it is a virtual certainty that HealthMax will prevail on its claim for declaratory judgment. This fact alone is sufficient to justify injunctive relief. *See, e.g.*, *Trustees of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, 527 F. Supp. 3d 722, 771 (E.D. Pa. 2021) (granting request for injunctive relief on basis that plaintiff was likely to succeed on claim for declaratory judgment).[1]

HealthMax is also likely to succeed on its remaining claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, piercing the corporate veil, and seeking an accounting. The Wong Decl. submitted herewith provides a detailed recitation of the facts giving rise to HealthMax's claims and supports a finding that HealthMax is likely to prevail on these claims. Wong Decl., ¶¶ 2-33.

Further, the First Amended Complaint specifically alleges that Defendants have breached the JV Agreement by refusing to respond to HealthMax's inquiries, thereby preventing the HealthMax-appointed Majority of the Board of Directors from being able to exercise control over APU's bank accounts, as set forth herein, and that Defendants' conduct has denied HealthMax its contractual right to exercise control of the affairs of APU as set forth in the JV Agreement. ECF

---

[1] *Aff'd sub nom. Trustees of Gen. Assembly of Church of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, No. 21-1662, 2021 WL 6101254 (3d Cir. Dec. 21, 2021), and *reconsideration denied*, No. CV 21-634-KSM, 2022 WL 16944000 (E.D. Pa. Nov. 14, 2022).

No. 12 at 20-21 (¶¶ 59-60).   There can be no legitimate argument on this point.
The Majority is being denied any ability to control the business as a result of
Defendants' conduct.   Therefore, Defendants are likely to succeed on their claims
and injunctive relief is warranted.

### B.     Irreparable Harm Will Result From HealthMax's Lack of Control and the Likely Collapse of APU's Business

If the Court does not grant injunctive relief, HealthMax will almost certainly
suffer irreparable harm in two primary ways.

First, HealthMax is being irreparably harmed by its lack of control over the
business of APU.   Pursuant to the JV Agreement, HealthMax is legally entitled to
appoint a majority to the Board of Directors of APU to control the business.
Plourde Decl., Ex. A at ¶ 6.   However, without access to APU's bank accounts, the
Board of Directors is being denied the ability to control the business.   Time and
time again, in analogous contexts, courts within the Third Circuit have regularly
held that the denial of a party's legitimate right to control various aspects of a
business constitutes irreparable harm.   For example, in the trademark context, the
Third Circuit has held that "[g]rounds for irreparable injury include loss of control
of reputation, loss of trade, and loss of good will."   *Kos Pharms., Inc. v. Andrx
Corp.*, 369 F.3d 700, 726 (3d Cir. 2004) (quotations omitted).   "Lack of control
over one's mark 'creates the potential for damage to ... reputation[, which]

constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case.' " *Id.*

As another example, in the franchise context, courts have recognized that irreparable harm flows form the owner of real property being unable "to make better use of the site, or the owner's lack of control over features, fixtures, and equipment located on the site." *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 631 (E.D. Pa. 2013) (quotations omitted). A "defendants' continued [illegitimate] occupancy of the store, after the termination of the Franchise Agreement, has caused, and will continue to cause, irreparable harm because 7–Eleven may no longer make productive use of its property." *Id.*

As another example, courts have recognized that irreparable harm would result from a plaintiff's "lack of control over the website and email domains [of the business, which] is likely to cause consumer confusion and to harm Plaintiff's and its brand's reputations." *Nat. & Tasty, LLC v. Parnes*, 2015 WL 4757181, at *6 (D.N.J. Aug. 10, 2015).

All of these same concerns are present here. By being denied access to and control over APU's bank accounts, the Board of Directors essentially has no ability whatsoever to control the business, despite having the legitimate right to do so. This will be absolutely devastating to the business and will destroy its reputation and goodwill to the extent not already destroyed by Lauture's conduct. The Board

15

is in the process of reasserting control over APU to try and salvage the business and clean up the mess that Lauture left, but without control over the company's funds, meaningful control is impossible.    Wong Decl., ¶¶ 32-33.    Without injunctive relief, APU will continue operating rudderless, with no leader at all, with the CEO having abandoned the business altogether and the Board of Directors being effectively held hostage by his refusal to respond to their inquiries and their inability to control the company's capital.  Without injunctive relief, the Board's ability to control APU will stand frozen until the conclusion of this litigation months or years from now.

Second, HealthMax will be irreparably harmed by the almost certain collapse of APU's business in the absence of injunctive relief.  No business can survive long without leadership.  Lauture has abandoned APU.  Typically, in such a scenario, the Board of Directors would step in to control and manage the business, but here, the Board of APU is being denied that right.  APU is a business with ***no one in charge***.  It is virtually guaranteed the business will collapse or be irreversibly damaged if this continues, long before the conclusion of this lawsuit. The Supreme Court and Third Circuit have made clear that the likely collapse of a business constitutes irreparable harm sufficient to justify injunctive relief.  *Doran v. Salem Inn*, 422 U.S. 922, 932 (1975) (finding irreparable harm shown where movant's business "would suffer a substantial loss of business and perhaps even

bankruptcy" absent injunctive relief); *Minard Run Oil Co. v. U.S. Forest Serv.*, 670 F.3d 236, 255 (3d Cir. 2011) (noting while a purely economic injury "cannot satisfy the irreparable injury requirement, … an exception exists where the potential economic loss is so great as to threaten the existence of the movant's business.").

Injunctive relief is patently warranted, and indeed necessary, to alleviate the irreparable harm that will result from HealthMax's lack of control and APU's almost certain collapse.  Wong Decl., ¶¶ 32-33.

### C.    The Balance of the Equities Weighs in Favor of Injunctive Relief

All of the equitable factors weigh in favor of granting HealthMax's request for injunctive relief.  HealthMax entrusted Lauture with millions for the purpose of building a joint venture for the manufacture and sale of facemask products in the United States.  Lauture abused that trust, failed to live up to any of the promises he made, misrepresented the true state and progress of the business, failed to provide HealthMax with timely or accurate updates regarding the status of the business, and ultimately shut down the business abruptly and without warning.  HealthMax has lost 100% of its investment, yet Lauture refuses to respond to its inquiries.

Further, there will be no harm to Lauture if injunctive relief is granted.  The duly appointed Majority of APU's Board of Directors divested Lauture of any authority to access or control APU's bank accounts.  Lauture and AAH expressly

agreed to that HealthMax would have such power. The JV Agreement grants HealthMax a majority ownership and majority voting share with respect to APU. Injunctive relief will not enlarge or diminish any of the rights of either HealthMax or Lauture, but rather would simply enforce the terms the parties expressly agreed to. For this reason, injunctive relief would have no effect on Lauture, but the failure to grant injunctive relief would substantially prejudice HealthMax.

### D. <u>Injunctive Relief is in the Public Interest</u>

It is in the public interest for the Court to grant injunctive relief here. First, "[t]he public interest generally weighs in favor of enforcing private contracts." *ACE American Ins. Co. v. Wachovia Ins. Agency Inc.*, 2008 WL 4630486, at *9 (D.N.J. Oct.17, 2008). Second, there are "compelling public interests of … protecting business investments." *Citibank N.A. v. Kyle*, 2015 WL 3755788, at *5 (E.D. Pa. June 16, 2015). Both purposes would be served by granting HealthMax injunctive relief to enforce the terms of the JV Agreement and Board Consents and protect HealthMax's investment, including the right to control APU that HealthMax expressly bargained for prior to investing millions in the company.

IV.   <u>**CONCLUSION**</u>

For the foregoing reasons, HealthMax respectfully requests that the Court grant the instant motion in its entirety.

Dated: August 15, 2023                          */s/ Jennifer Mara*
                                                Jennifer Mara, Esq.
                                                **BALDASSARE & MARA, LLC**
                                                75 Livingston Avenue, Suite 101
                                                Roseland, NJ 07068
                                                T: (973) 200-4066
                                                F: (973) 556-1076
                                                E: jmara@mabalaw.com

                                                Eric A. Plourde, Esq. (*pro hac vice*)
                                                Jack Shaw, Esq. (*pro hac vice*)
                                                **PROCOPIO, CORY,**
                                                **HARGREAVES & SAVITCH LLP**
                                                525 B Street, Suite 2200
                                                San Diego, CA 92101
                                                Eric.plourde@procopio.com
                                                Jack.shaw@procopio.com

                                                *Attorneys for Plaintiff*
                                                *HealthMax Medical Technology Ltd.*